Good morning, Your Honors. My name is Daryl Parker. I am the attorney for the Plaintiff and Appellant NIPPONKOA Insurance Company, Ltd. This is an appeal from a motion, a cross motion for summary judgment, and the basic question here, I believe, is what law applies in deciding whether or not Federal Express is entitled to revoke the limitation of liability provision that it relied on at the time of the motion for summary judgment. What's involved was consignment of Toshiba computer memory modules. They were sent by truck from Irvine to LAX by air from LAX to Stedham Airport in the United Kingdom. Thence they were carried by truck to a warehouse at Feltham, England, and while there they were stolen by an employee of Federal Express. Now, it's NIPPONKOA's contention that in the airway bill issued by Federal Express, there is a provision which expressly specifies the law which is supposed to be determinative of the rights and duties of the parties in this case. It's NIPPONKOA's contention as a matter of contract and as a matter of law, given the facts of this case, and particularly given the fact that this cargo was stolen by an employee of the defendant, that it is not entitled to invoke the limitation of liability provision. At the outset, I might add also, this is not a case in which this ruling will release any floodgates because the contract provision in question has since been changed and therefore I'm going to be the last person ever to make this particular argument. Now, the first point I'd like to make is that the clause that's entitled Road Transport Notice in the Federal Express Airway Bill makes the convention on the contract for international ferries used by the road apply to this clause as a matter of contract. I'm going to call that convention the CMR simply because it's easier than saying the whole name. And the question is not whether or not, in this case, the shipper, who was my client's insured, had a fair opportunity to declare a higher value. The question is whether and therefore get a higher limitation of liability. The question is whether or not the limitation of liability that's included here, assuming that it would otherwise be applicable, is applicable under the facts of this case given how the loss occurred. And the first step in making that analysis is to decide what it is that the Airway Bill provided about the legal rights and obligations to be applied. There is a provision in the Airway Bill called the Road Transport Notice, and it states, in substance, shipments transported partly by road into a country that is a party on the convention CMR are subject to the terms and conditions of the CMR, notwithstanding any other provision provided in this Airway Bill. Now, what Nipon-Colas admits is that that language makes the CMR applicable to this carriage as a matter of contract. We are not arguing that it applies of its own force, but that it's applied by contract. Counsel, if we agree that the CMR is applicable, let's look at the provisions of the CMR, and one of them imposes liability if the employee who did the bad acts was acting within the scope of his employment. That's correct, Your Honor. And that's what we're... That's what we're going to be talking about, I think. That's correct, Your Honor. And the evidence that was presented and not rebutted is that the goods in question were stolen by a Federal Express employee who worked at the warehouse where they were stored while they were in transit. And we submit that all of the employees who worked at that warehouse, whether they were assigned a particular cargo or not, were all responsible and were all entrusted with the These facts are not... I do not believe were disputed below. Now, I might also point out that the declaration that was submitted in support of Nipon-Colas' motion said that the particular employee who took this material was himself a driver, and could well have been, even if that wasn't his shipment, he's a driver, he's entrusted with looking out by implication for all the cargo that is within his scope of activities. But is he acting within the scope of his employment when he steals it? It's... I don't think that that's the test, Your Honor. In other words, if... Obviously, if the employer said steal this stuff, he would be. But I think that the acting in the scope of his employment in this context means that if he has let's say control or custody over the cargo that it is in the scope of his employment because he is basically stealing something with which he came into contact by virtue of the fact that he was employed and handling this cargo. And the... I think that the Brinks case, which we cited, the Second Circuit case, is instructive in that regard because the Second Circuit there talked about the fact that the employees who are in the general area of the work that's being done and in the course of which the loss occurred could reasonably be construed to be, to have been entrusted with the care of the cargo. And the declaration on English law that we submitted at the trial court level expressed the opinion that under English law that the activities of the driver and somebody who was involved at the warehouse would be considered under English law to have been entrusted with those goods. And hence, it would be within the scope of his employment because he was an employee. This is what he did. He saw an opportunity to steal something and he did. And he wouldn't have had that opportunity if he had not been employed. I'm asking a few questions. A minute ago, you were answering Judge Fletcher's question about the CMR and the provision acting within the scope of their employment, which is ultimately, and you gave it a definition. What law were you relying upon to embellish that clause? I was relying on, well, first of all, the... Were you relying on federal common law? Were you looking at the law of New York? Were you looking at the law of California? Were you looking at the law of England? Ultimately, we're looking at the law of England. But in order to arrive at the law of England, first you have to look at the law of either New York or California. And the provision in the CMR that deals with this says that, in substance, in deciding whether or not willful misconduct has occurred and whether it's going to be attributed to the employer, you have to look to the law of the court which is, quote, seized of the case. In other words, the forum court. Now, in this case, we actually have a choice. There's two possible forums. One's New York and one is California, because this case was transferred from the Southern District of New York. Is there any difference? Let's speak first. Is there any difference between New York and California law? Not in this regard, Your Honor. That's what my sense was. Basically, both states say that when you make this kind of decision, you have to decide, you have to apply the choice of law rules of the foreign state. And the choice of law rules in both California and New York, even though they're phrased slightly differently, the choice of law is really the governmental interest analysis. And what we submit is that under either the Brinks case or the insurance company of North America case, which relied on the Brinks case, both of them say you apply the choice of law rules. And in deciding how you're going to judge whether or not particular conduct is willful misconduct, you look to the state or the jurisdiction that has the greatest interest. And whatever it is you're looking at. And our proposition is that under English law, which we tried to establish by virtue of these declarations, willful misconduct in the form of a theft by an employee who was acting in connection with stuff that he was entrusted with by virtue of his employment would be considered willful misconduct and attributed to the employer. That's not the case in California. If this was strictly a California case, that would not happen. That would not be done. The same is true in New York. In New York, it would not be attributed to the employer. So your real problem is here we are in California, California court. Why shouldn't we apply California law to two enterprises that operate in California? Well, Your Honor, the reason is that we are we are asking you to apply California law. But in this case, we're asking we're saying that the California law, which is supposed to be applied, is the choice of law rules. How do you get from there to where you want to go? Well, if if the if the court applies California's choice of law rule, for that matter, if it applies New York's choice of law rule. Let's just stick to California. How do you get from California to England? It's a governmental interest analysis. What jurisdiction has the greatest interest in deciding and governing the conduct that led to the laws in question? And that's the test that the that this circuit applied in the insurance company in North America case. It's also the test that was applied in the Brinks case. And in both cases, they applied the same test, the same choice of law rule to decide what jurisdictions laws applied in the INA case. It happens that California decided California had a greater interest and therefore the California substantive law would apply. The Brinks case, using the same reasoning, said, well, in this particular case, it's a theft and therefore South African law applies. Well, can you explain to us why in California we would think that English law applied to this case between two corporations out here? Well, first of all, this was a shipment from California to the United Kingdom. So the party that was damaged by this particular conduct was a party in the United Kingdom, the consignee of this shipment. I thought it was your client that was damaged. Well, our client was damaged indirectly, but it was it was the operations in the United Kingdom, the company that needed to use these computer. But right now, it's your client. So the Nippon Coed is the one that's damaged because they're the ones who paid the loss. All right. So they are the same with some of the laws. FedEx is out here. Why on earth do we apply English laws? You haven't got to answer that question yet. Your I think the answer is that the conduct, the theft occurred in England. Well, there's no doubt about the employee who was presumably resident in England. Sure. If England. I'm sorry. If so, I mean, what does that prove? We are we all know that the effect occurred by an English employee because in English, because England is the country that has the greatest interest in deciding what incentives and disincentives it needs to apply to companies that are acting within its jurisdiction in terms of supervising employees, screening employees and making them responsible for the loss losses that occur while the goods are there. So we have an English thief. We have a theft that occurs in England. England is the activities of Federal Express in England are subject to the jurisdiction of the English courts. And England is the country which would have the greatest interest in in regulating the behavior of the companies which operate within its borders. And this is clearly, I think, a activity. The question of responsibility of an employer for the actions of its employee is something that's peculiarly within the interest of the country where those activities are occurring. If we were to think about what the federal common law would require or apply, do you know what the answer would be? Your Honor, I think that the federal common law would be the same approach, which is there'd be a choice of law. You have to do a choice of law analysis first. You wouldn't simply apply the law of a particular state. You'd ask what state or jurisdiction has the greatest interest in deciding the rules that apply to this kind of conduct. I have two other questions, I guess. You said at the very beginning of your remarks when you were talking about the way bill and you said we resort to contract principles to interpret that, which contract principles were you applying when you were interpreting the road transport notice? Federal common law? You said general contract principles apply. Where do you get those general principles? I think the general principles of interpreting the contract would come from the form state California, but I don't think that it's going to be any different under either New York law or federal common law. You have certain language in this bill of lading, this airway bill. You have to read that language. You have to interpret it against the party who drafted it, who is in this case Federal Express. It has to be interpreted in a way that gives meaning to all of the phraseology in the bill of lading. And finally, it's a contract of adhesion and therefore is to be interpreted against the carrier who drafted it. I know under federal maritime law, those are the rules that apply. I know under California law, those are the rules that apply. Under New York law, those are the rules that apply. In fact, they're maxims of jurisprudence which California imported from New York originally. And so I think that those are the principles. And if you apply those principles here, then you come up with the interpretation which I believe we're arguing for, which is that this clause makes the CMR applicable to any shipment in which part of it is conducted by road. My final, just one second, my final question is, you said under English law that you believed it would prevail. That's correct, Your Honor, and that's based on. Now, as I understand it, all the stipulated facts show, or the facts were not in dispute, was that an employee of FedEx allegedly was the thief or whoever. But we don't know anything about that employee or we don't know anything about the circumstances. Well, we do know that. We don't know whether this employee was charged with responsibility of, you know, maintaining the shipment or charged with the responsibility of actually picking up the shipment and taking it. He could have been a random employee just came by and said, ah, look at all these monsters over there. I think I'll just take them and sell them. Well, first of all, we do know that it was stipulated that the theft occurred at a warehouse. So it wasn't that a Federal Express employee hijacked a truck that he happened to see going by. So he was there because he was an employee of Federal Express. He wouldn't have been there if he weren't an employee. So we know that he had this stuff in his constructive possession, even if he had not been assigned to that particular shipment. We also submitted part of the declaration below the investigative report, which was not objected to. And it showed, stated that this particular driver, the particular employee who took the material was a driver. And the driver of a truck that carries these goods isn't trusted with their custody. And I believe it would be an artificial distinction to say that, well, you know, one employee who is at the warehouse doing his job and happens to notice that there's something else there that he's entitled, that he would like to have, that he's not entrusted with refraining from that activity. And that's part of being an employee who is entrusted with or works for a company that carries goods, is that you refrain from engaging in behavior which would lead to the destruction of it. I wonder if I could just explore a little bit more on the question of whether it's California law or English law. As I understand it, in these conflict of wars cases, there's one category called primary behavior. For example, the tort, if this was the tort suit. England is quite interested in discouraging torts of this kind. So we would be applying English law. But this is not a tort suit. We're here with the loss allocation. And who is going to bear the loss? And in that case, where the tort occurs is fairly irrelevant. The question is between people in California, companies in California. And as I understand it, the governmental interest of England in the allocation of the loss is pretty small. California has an interest in who bears the loss. Now, if that's incorrect, tell me where I can find it. Well, Your Honor, I believe that you can't separate loss allocation and behavior control, if you will, in this context. In one of the cases which both we and FedEx cited, Visionaire, this circuit decided in a rather similar context that intentional acts by Estivador in damaging cargo that they were unloading deprived, as a matter of law, quite apart from contract, the carrier of the benefits of the limitation of liability. Now, England is the country in which these commercial activities are carried out. And England has an interest in laying down the rules and the framework under which English employers and employees conduct commercial operations there. These are goods that are coming to an English-based company that's going to be processing them. The loss allocation, I think, is also, in terms of the equities, ultimately this loss gets borne by the insurance company for one or the other of the parties. And under an equitable analysis, the loss should be borne by the insurance company for the party who's in the best position to prevent this from occurring. There is nothing that Nippon Co. has insured could have done to prevent this loss. FedEx, on the other hand... You know, but that gets back to... You're confronted with the basic California law that the willful act of the employee for his own benefit isn't attributed to the company. As far as the loss allocation goes, you've just got a question of who should bear the loss and where the thought occurred. Obviously, you can't separate them. Unless you have some case absolutely saying you can't do it, it's one of those things that's quite evident. If you had chosen to sue in England and sued for the tort, you would have won. If you didn't choose that, choose to sue in California, then you're stuck with California law. But again, we submit that what we're stuck with is the California choice of law. The California choice of law... Why should they choose to go to England? They should choose to go to England because England is the place where these activities occur. You have a supplier, you have a contractor, Federal Express... So a crime and a tort occurred, yes, but not where the contract was made. But the contract, like literally millions of contracts, contemplates goods moving back and forth between countries. And England has an interest. And if it's the English entity, the UK subsidiary of Toshiba that bears this loss, that's a loss that's going to get passed on to English consumers because the insurance premiums for companies like Toshiba are going to go up because whenever they ship to England... Because if it goes to England, they know that in certain situations, there's a risk that there may not be a full recovery. These subrogation recoveries are taken into account in adjusting the premiums for the insurance that companies pay. And if California, if Toshiba has to pay higher premiums for this, this is going to get on shipments to England, this is going to get passed on to the English consumers. The English are saying, no, in this case, in this little narrow slice of reality, we don't want this cost to get pushed on to our consumers in England. Okay. Why stop? Yes. You've been on for five minutes. Yes. Thank you. I would like a... Minute. Good morning. May it please the Court. I'm Frank Salame, condiment foresight representing Federal Express. Listening to the questions that the Court is asking, I would like to tell you what I would like to do in my presentation. I would like to address briefly the issues of choice of law, opposition of choice of law, opposition on the course and scope of employment, and then address what I see as really the fundamental issue, and that is that the CMR simply does not apply here by contract or otherwise. So I think the issues which we're addressing first are really secondary. But let me give you our position first on the choice of law. And I think it's very much in keeping with what Judge Noonan was saying. Basically, what we're dealing with here, by counsel's own admission, is contractual provisions. He's claiming that the CMR is incorporated into this document by contract. Well, Eddie, it is if we look at the road transportation as being part of the whole thing of getting the property to England. Well, Your Honor, let me jump to the end and come back to you. What they're asking you to accept here is that the whole transportation is governed by the CMR. And that's the only way it makes sense, because the notice of road provision in the way bill, airway bill, the notice of road provision says wholly or partly into the country by truck. Now, the trucking portion in England certainly wasn't into the country by truck because the goods were already there. You must, to accept their argument, go back to the trucking in California I understand that. So to accept that, you have to accept then that the CMR now applies to the whole transportation, which clearly it does not. It does not for several reasons. Well, it wouldn't have gotten there if it had gone partly by truck. Yeah. But clearly, the intent of the parties here was that this was an air transportation. It was an airway bill. And the trucking transportation was incidental to the air transportation contract of transportation by air. The notice provision in the way bill, even if you accepted it was incorporation rather than just a notice as we contend, if you accept it, it doesn't say the CMR will apply. It says it is subject to the CMR. That means you have to look at all of the terms of the CMR to see if it applies. And how does the CMR apply? It applies to contracts for transportation by road. This was not a contract for transportation by road. It was a contract for transportation by air with pickup and delivery by road. Number one. Number two, the CMR, according to its own terms, applies only when the vehicle, which is carrying it by road, is then put on some other form of transportation and then is taken off. So it never leaves that road vehicle. And it defines vehicle as trucks, trailers, semi-trailers, and the like. So that, and this is a European treaty. So if you're transporting a shipment from Rome to London, and you have a tractor trailer pulling a trailer, and you get it across Europe, and you get it to the channel, and then that trailer is lifted off and put on a train under the tunnel, or if you put it on a ferry across and then put on another truck, that's where it applies. It does not apply by its own terms and by the expert that we've cited in our brief. It does not apply in cases such as this, where a truck delivers a consignment, you take it off the truck, you put it on an airplane, you travel, take it by air to England, you take it off the airplane, which took it into the country, and then you put it on a truck. What's more is that what the plaintiffs would have you believe is that the Federal Express intended this entire transportation to be a contract by road, which is the only time that the CMR applies by its terms. Now, again, if you accept their argument, you would have to accept it is subject to the terms and conditions of the CMR, which requires a contract by road, which we do not have, and it requires that the vehicle in which the goods are contained, which is a road vehicle by definition in the CMR, that that vehicle goes all the way without being opened. You take it off the tractor trailer, you put it on a plane or a bus or whatever, and off it goes. Neither of those apply here. Finally, international air transportation by air is clearly governed by the Warsaw Convention. We know that. It's all over the way bill. It's all over the airway bill, which is the contract that we're dealing with, and it is an international treaty in the supreme law of the land. What counsel will have you believe is that Federal Express intended that this entire transportation to be governed by the CMR, which is the only way that their argument makes sense, thereby preempting the Warsaw Convention, which you can't do, because the Warsaw Convention is a treaty of the United States, is the supreme law of the land. The parties couldn't have intended this. It simply doesn't make sense. The only way this partly by air, partly by road into the country makes sense is in the context in which this European legislation was enacted, where you have a motor vehicle, and it says vehicles, trucks, trailers, semi-trailers, and they use another term, but it's in our footnote, and it's basically a semi-trailer, is carried all the way, and you need to cross a river or put it on a barge for part of the transportation. It's not intended to preempt the Warsaw Convention, and it's not intended to turn what is essentially a contract by air into a contract by road, which is what this CMR is all about. And again, even if you accept their argument on the notice, it doesn't say it will apply. It says it will be subject to. You can't pick and choose. If it's subject to, you don't pick and choose about which terms of the CMR to apply. You have to apply all of them, and they don't apply to the facts, the undisputed facts of this case. Choice of law. What we're talking about here is terms of a contract, and whether or not those contract terms, whether or not the CMR applies, whether there's a limit of liability, how the limit of liability will apply, the contract is made in California by a California resident defendant with a California corporation for transportation originating in California. The interpretation of that contract and how those limits of liability apply must be applied. California clearly has the interest in that contractual relationship and how those terms are interpreted. Course and scope. The implication, what my opposing counsel said, was that this driver had this shipment. There's no such evidence. The record is, undisputed, that there was not enough evidence to prosecute this man. In other words, we really don't know what happened. It's been deduced that it was a Federal Express employee. We don't know if he was a guy that was going off-duty. We don't know if he was off-duty. He may have punched the clock out and left and seen the consignment and taken it. We just don't know. And ultimately, if we were to get that far in this analysis and the court were to accept their argument that this is a contract by road, not by air, and all of the other arguments, what we have is a factual issue. It's got to go back to the district court for a determination. Even if you were to apply foreign law, the determination of foreign law is essentially under Rule 44, I believe, a factual issue that the trial court would have to determine. It seems to me that if you don't, if you accept all of their arguments, this has to go back to the trial court for choice of law, if they decide English law applies, what that law is, and then whether there's evidence to support a finding of willful misconduct. But it seems to me absolutely clear that the parties in California who were putting this shipment on an airplane on an airway bill governed by the that this CMR could apply, whether it's incorporated by contract or otherwise. Those are my comments, Your Honor. Thank you. I'll try to keep within the one-minute limit. First, on the issue of the CMR, again, our contention is not that the CMR applies of its own force. Our contention is that the parties agreed that it would apply as a matter of contract. This is not something strange or unusual. The most common example is the USA Clause Paramount, in which goods that are shipped overseas or into the United States, it is agreed that either the United States Carriage of Goods by Sea Act or some other act will apply to the portions of the carriage which are not governed by some mandatorily applicable statute or convention. And that's all that we're saying here. We're not saying that if the plane had crashed, it would have been governed by the CMR. We're saying that what this did is to make the CMR the blanket that covered those portions which were not covered by some other mandatorily applicable statute. And the Clause Paramount case, I think, made it clear that that's a perfectly normal sort of thing. You should wrap it up. And then with regard to the choice of law issue, this was a shipment that originated in California and the contract was made here. But California's livelihood, its economy, depends on being able to ship goods out of the country. And that does not so that California, anyone who makes a contract in California to ship something out of the country has to be aware that the laws of other countries may apply to their rights. And there's nothing cruel or unusual about applying that rule to this sort of situation. Thank you. Matter will be submitted. Dang versus cross. Thank you.
judges: B. Fletcher, Noonan, Paez